# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**DEMARIO DONTEZ WALKER**                                    **PLAINTIFF**

**VS.**                                                                          **CIVIL ACTION: 1:17cv244-LG-RHW**

**ANGIE HOLLAWAY,** *et al.*                                           **DEFENDANTS**

## REPORT AND RECOMMENDATION

Before the Court are motions for summary judgment filed by both the *pro se* Plaintiff [73] and by the Defendants [44], as well as a number of related motions which the undersigned will discuss in this report and recommendation, but will deal with via separate orders.

### Facts and Procedural History

Demario Dontez Walker, Mississippi Department of Corrections (MDOC) inmate # L1625, is presently incarcerated at Central Mississippi Correctional Facility (CMCF) according to the MDOC web site, serving sentences totaling 13 years for three convictions of false pretense from Jeff Davis, Lamar and Rankin Counties. His tentative release date is June 9, 2025. On September 7, 2017,[1] while he was confined at South Mississippi Correctional Institution (SMCI), Walker filed this civil rights lawsuit under 42 U.S.C. § 1983, naming as defendants Associate Warden Angie Hollaway, Case Manager Chasity Blakley, SMCI Superintendent Jacqualine (*sic*) Banks, Assistant Director of Offender Services Jarita Bivens, Corrections Officers Jamario Clark and Marcus E. Nelson,[2] and MDOC Commissioner Pelicia Hall. Walker complains he was administratively reclassified to C-custody on August 22, 2017 due to Rules

---

[1] The complaint was signed August 28, 2017.

[2] Attempts to serve Nelson were unsuccessful and he was dismissed from the case on August 15, 2018. See, [43] Order adopting [41] Report and Recommendation. Walker's December 2018 motion to have Nelson added to the case again was denied by the District Judge. [66], [91]

Violations Reports (RVRs) issued to him in retaliation for his filing a prior § 1983 lawsuit, Civil Action 1:17cv27-RHW.[3] He alleges Blakley performed the reclassification which Hollaway approved, and as a result he was moved from housing Unit 10 which he claims had no active gang members, to housing Unit 9 which is "nothing but gang members." Bivens is alleged to have approved his transfer from Unit 10 to Unit 9. [1, p. 4-5] Walker states his prior lawsuit alleged that gang leaders forced him into "sexual slavery," and he asserts in this case that as of August 22, 2017 (just six days before he signed his complaint) gang members are forcing him to return to the sex trade or be beaten, that he is blindfolded during sexual encounters, and is being starved and allowed to shower only twice a week. *Id*.

Walker alleges he has reported Clark for sexually assaulting him on at least a dozen occasions between February 22, 2016 and March 10, 2017.[4] He claims Clark is part of a gang and that he put out a statewide "hit" on Walker. [1, pp. 5-6] As to Defendants Banks and Hall, Walker states only conclusory allegations that they "ordered the campagins (*sic*) of (1) harassment (2) retaliation (3) terror" which the remaining defendants carried out. [1, p. 7]

On September 7, 2017, Walker was moved from SMCI to CMCF. [44-2, p. 6] On September 29, 2017, he filed [6] a motion to amend his complaint to add new defendants and claims which the Court granted in part, adding as defendants Pamela Robinson, Director of Offender Services/Director of Classification because after Walker notified her of his situation, she approved his classification and transfer to CMCF; and Ron King, CMCF Superintendent, because he assigned Walker a top bunk (Walker claims King knew he was medically restricted to

---

[3] Case 1:17cv27-RHW was filed February 1, 2017, answered August 17, 2017, and dismissed March 20, 2019 for failure to exhaust administrative remedies prior to filing. The present case alleges Walker received two major and four serious violation RVRs in the past six months. [1, p. 6]

[4] Walker alleged sexual assaults in Case 1:17cv27-RHW but did not name Clark as a defendant. The Court denied his motion attempting to add Clark in that case on July 19, 2017.

a lower bunk), provided Walker no hygiene and clothing, denied him mail, showers, recreation, cleaning supplies, legal material and writing supplies (requiring Walker to borrow a pen from another inmate), and housed him with violent inmates. [16] The Court denied a second motion to amend to add claims under an invalidated portion of the Gender Motivated Violence Act, 34 USC § 12361, and for lack of factual allegations to present a constitutional claim. [15], [17] By January 1, 2018, Walker was moved to the State Penitentiary (MSP) at Parchman, MS. [14]

Walker was released from prison in 2018. As of June 18, 2018 he gave his address as 300 Lafayette Avenue in Leakesville, MS [37]; by July 10, 2018 his address changed to 916 Inge Street, Jackson, MS [40]; and effective September 20, 2018 his address was 221 N. Timber Street, Brandon, MS. [49] Although Walker did not identify them as such, the Leakesville address is the Greene County Jail, the Jackson address is a half-way house, and the Brandon address is the Rankin County Jail. [37]

Defendants Hollaway, Blakley, Banks, Bivens, Clark, Hall, Robinson and King moved for summary judgment on September 24, 2018, asserting Walker failed to exhaust administrative remedies prior to filing suit, claiming they are entitled to sovereign immunity for all official capacity claims, and urging that Walker has failed to state an actionable claim against them. [44] Walker first responded on September 28, 2018, stating he did not oppose the motion except as to his claims against Jamario Clark and agreeing to dismissal of all other named Defendants. He argued his claims against Clark had "been carried through via ARP/PREA at MDOC to their end fully." [50] Based on that response, the undersigned entered a Report and Recommendation recommending the summary judgment motion be granted as to all Defendants except Clark. [52] On October 11, 2018, Walker filed [53] a motion for extension of time to complete discovery, for assistance, for time in the library, and to withdraw [50] his response to

the summary judgment motion.   He also filed [54] a three-sentence motion for discovery on the issue of exhaustion and immunity, which was followed a week later with [56] another motion seeking extension of time to respond to the summary judgment motion, and also requesting dismissal of Defendants' motion and discovery on summary judgment issues.   Walker also filed [57] his objection to the Report and Recommendation to dismiss all defendants save Clark.

On October 31, 2018 Walker filed [59] a second response in opposition to Defendants' motion for summary judgment and [60] a third motion to amend the complaint.   He filed [67] a supplemental (third) response opposing the summary judgment motion on December 10, 2018, and yet another (fourth) response [70] to Defendants' motion on December 21, 2018, along with his own motion for summary judgment [73], and motions seeking a temporary restraining order [71] to prohibit MDOC from housing him at MSP, CMCF, or SMCI; to supplement the complaint [72] to clarify his claims; and for a copy of Defendants' file [75] because his own case file was reportedly destroyed by flooding in a storage room.[5]   Walker also filed a fifth response to the summary judgment motion which he designated a "clarification" or "supplement" to his earlier response(s).   In that document, Walker contends Defendants' motion is premature for lack of discovery, challenges documents submitted in support of Defendants' motion, and states he does not have his case file or access to a law library and is receiving medications for mental problems.   [76]

On January 2, 2019, Walker filed documents titled "additional evidence of compliance with exhaustion," a sixth response to Defendants' motion. These documents consist of:

1. A September 5, 2017 letter from ARP director R. Pennington to Walker at SMCI advising Walker that Pennington had forwarded Walker's letter to CID Chief Sean Smith for investigation of Walker's allegations, that he should contact Chief Smith or his team with

---

[5] According to a grievance filed November 18, 2018 while he was in Rankin County Jail, Walker's file was taken from him and placed in storage at Parchman.   The grievance was sent to Unit 29 Security for response.   [79, pp. 3-4]

       questions or concerns regarding the issue, and that if Walker were not satisfied with CID's results upon completion of the investigation, Walker could submit his complaint to his facility's ARP office for consideration.  [80-2, pp. 1, 3]

2. An ARP form dated August 9, 2017 and bearing case number CID, in which Walker reports that Marcus Nelson and others at SMCI "participated in sexual assault and a sex slave ring (forcing sex with others for money) pimping out gay inmates."  After reporting this conduct Walker states he received six RVRs, was removed from two jobs, placed in administrative segregation, removed from trusty status, and threatened with transfer to other violent facilities or units or lockdown.  Walker requested that he be allowed to file criminal charges, not be transferred, and that retaliation stop.  [80-2, p. 2]

3. A September 25, 2017 letter from Pennington to Walker at CMCF stating that Pennington had forwarded Walker's letter to CID Chief Smith for investigation, that he should contact Chief Smith or his team with questions or concerns regarding the issue, and if Walker were not satisfied with CID's results at the completion of the investigation, he could submit his complaint to his facility's ARP office for consideration.  [80-2, pp. 4, 7]

4. A handwritten document labeled "Sensitive Issue ARP," stamped received by ARP September 25, 2017, in which Walker states he was sexually assaulted by Officers Clark and Nelson and several inmates prior to transportation to CMCF and reiterating his claims of retaliation via RVRs, administrative reclassification, *etc*.  He requested that involved staff be sanctioned according to MDOC policy.  [80-2, pp. 5-6]

[80]  None of these documents address the issue of exhaustion of administrative remedies prior to the filing of the instant lawsuit on September 7, 2017.

On January 22, 2019, Walker filed [86] a motion to be allowed to conduct discovery, *e.g.*, depositions, interrogatories, requests for production, and requests for admissions. He gave no indication of what discovery was needed or for what purpose.  On February 7, 2019, he filed [89] a motion to compel production of the results of CID investigation(s) and of all investigative files, asserting that although the ARP director forwarded his grievances to CID for investigation, CID "has not responded."  The Court notes that Walker's sensitive issue ARP filed at SMCI was rejected on August 30, 2017; he failed to complete the administrative process with respect to the ARP he filed at CMCF, and he filed suit only two days after the ARP director's first letter advising him his grievance had been sent to CID for investigation.  [89-1], [80-2, p. 1]

By Order [91] on February 8, 2019, the District Judge rejected [52] the undersigned's

recommendation that the summary judgment motion be granted as to all defendants other than Clark; allowed Walker to withdraw [50] his initial response to Defendants' summary judgment motion; and granted his motions [56] and [58] to the extent that they sought extension of time to respond to the summary judgment motion, giving Walker until **March 1, 2019** to file any additional response. (emphasis in original)   The District Judge denied all other relief requested in the latter motions, including Walker's requests for discovery.   [91, p. 2]   Walker filed no additional response to Defendants' motion; instead, a month after the deadline expired, he filed yet another request for extension of time to respond to Defendants' motion.   [96]

<u>Standard of Review</u>

Under FED.R.CIV.P. 56 summary judgment is required where there is no genuine dispute of material fact and movants are entitled to judgment as a matter of law.   A genuine dispute of material fact exists "only where a reasonable jury could look at the evidence and return a verdict for the non-movant."   *Johnson et al. v. Thibodeaux City et al.*, 887 F.3d 726, 735 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).   On motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorable to the non-moving party.   *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005).   Factual controversies are to be resolved in favor of the non-movant where there is an actual controversy, *i.e.*, "when both parties have submitted evidence of contradictory facts."   *Amerson v. Pike County, Miss.*, 2012 WL 968058, *2 (S.D. Miss. Mar. 21, 2012) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).   The summary judgment burden of proof rests on the party who has the burden of proof at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

Parties moving for summary judgment must identify those portions of the pleadings and discovery on file and any affidavits they believe demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once movants carry that burden, the non-movant must show summary judgment should not be granted, a burden he cannot meet by resting upon mere allegations or denials.; he must set forth specific facts showing a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which show the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-325; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (one opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations of the moving party with specific, factual disputes; mere general allegations are not a sufficient response."). If the party with the burden of proof cannot produce evidence on an essential element of his claim, summary judgment is required. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990). The Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air*, 37 F.3d at 1075. Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence, will not suffice to create a real controversy regarding material facts. *Johnson v. Bernstein*, 547 F. App'x 412, 413 (5th Cir. 2013) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

<u>Exhaustion of Administrative Remedies</u>

Defendants contend Walker failed to exhaust administrative remedies prior to filing suit. The Prison Litigation Reform Act of 1995 (PLRA) requires that a prisoner exhaust administrative

remedies before bringing a § 1983 action in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (Supp. 2000). Exhaustion is required before an inmate brings an action with respect to prison conditions, regardless of the relief offered through administrative procedures. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The United States Supreme Court has explained that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. See *Porter v. Nussle*, 534 U.S. 516, 532 (2002); see also *Jones v. Bock*, 549 U.S. 199, 204 (2007) (reaffirming that exhaustion is mandatory; stating it is an affirmative defense). The Fifth Circuit Court of Appeals reiterated these principles in *Gonzales v. Seal*, 702 F.3d 785 (5th Cir. 2012), recognizing that "pre-filing exhaustion of prison grievance processes is mandatory." *Id.* at 788. Proper exhaustion is required and is not accomplished "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). An inmate's grievance must be sufficiently specific to afford "officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion." *Walker v. East Miss. Corr. Facility*, 2013 WL 4833901, *2 (S.D. Miss. Sept. 11, 2013) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)); *Tompkins v. Holman*, 2013 WL 1305580 (S.D. Miss. Mar. 26, 2013). "The requirement of exhaustion applies regardless of Plaintiff's opinion on the efficacy of the institution's

administrative remedy program." *Nealy v. Moore*, 2013 WL 6230107, *3 (S.D. Miss. Nov. 30, 2013) (citing *Alexander v. Tippah Co.*, 351 F.3d 626, 630 (5th Cir. 2003)).

The MDOC has a two-step administrative review process to address inmates' grievances relating to their incarceration. To initiate the process, within 30 days of the incident complained of the prisoner must make a written request for administrative remedy to the ARP, which screens the grievance. If the grievance meets the required criteria, it is accepted into the ARP and proceeds to the first step. At the first step a prison official responds in writing to the inmate's request. An inmate dissatisfied with the response may so state on the response form and proceed to the second step. A prison official provides written response to the second step, and if the inmate remains unsatisfied, he may file suit. See *Threadgill v. Moore*, 2011 WL 4388832 at *3 n.6 (S.D. Miss. 2011).

The parties agree that Walker filed a sensitive issue ARP grievance regarding his reclassification and subsequent changes in his housing assignment. [1, pp. 3-4], [44-1, p. 2] The grievance is dated August 22, 2017 and stamped received by ARP August 30, 2017. By the time ARP received the grievance, Walker had already signed his complaint and had it approved by SMCI as legal mail; the complaint was received by the clerk of court on August 31, 2017. [1, p.4], [1-2] Walker says his sensitive issue request was denied [1, p. 3], and Defendants have presented an August 30, 2017 letter from ARP to Walker at SMCI advising him that the matter did not meet the criteria for sensitive treatment and returning his grievance for submission through ARP as a non-sensitive ARP within five days after receipt. [44-1] Walker was moved to CMCF on September 7, 2017. [44-2, p. 6] Two weeks *after* he filed suit and was transferred from SMCI to CMCF, Walker filed grievance CMCF-17-3132 regarding his August 22, 2017 reclassification and his move to CMCF on September 7, 2017. ARP received the grievance the

same day it was filed, but backlogged it due to Walker's other pending ARP grievances.   Walker filed suit over a month *before* ARP accepted the grievance on October 19, 2017, and three months before Michelle Jackson provided the first step response to the grievance on December 7, 2017.   [44-2]   Walker signed for receipt of the first step response December 14, 2017.   [44-2, p. 1, 9]   That ARP was closed when Walker failed to submit a second step appeal.   See [44-2, p.1], Affidavit of ARP Investigator Le Tresia Stewart.

Walker states in document [89] that he filed sensitive ARPs which the ARP Department forwarded to CID to investigate, and attaches the September 5, 2017 letter ARP sent him at SMCI and the September 25, 2017 ARP sent him at CMCF advising him that his complaints were forwarded to CID for investigation, that any questions or concerns he had should be directed to CID, and that if he were dissatisfied with CID's results at the completion of its investigation, he could submit his complaint to his facility's ARP office for consideration. [89-1, pp. 1-2]   Walker filed suit two days after the first letter was issued, and over two weeks before the second letter was issued.

Walker couches his reclassification about and housing assignment complaints in terms of retaliation, contending the actions resulted from RVRs issued to him in retaliation for his filing another lawsuit, but his conclusory allegations do not suffice to state a valid § 1983 claim for retaliation.   *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (a prisoner must allege a specific constitutional right, the defendant's intent to retaliate against him for his exercise of that right, a retaliatory adverse act, and causation).   In any event, based upon the documentary evidence presented by the parties, the undersigned finds Walker did not exhaust administrative remedies with respect to his claims regarding classification and housing assignments (regardless of how he may designate them) prior to filing this lawsuit.   Since this finding entitles Defendants to

summary judgment on those claims, the undersigned finds it unnecessary to address the remaining grounds presented by Defendants. However, as Walker points out in his own motion for summary judgment and memorandum in support [73], [74], Defendants' motion does not address his sexual assault allegations against Clark. While that does not entitle Walker to summary judgment, it highlights the absence of a foundation for summary judgment in Clark's favor on the sexual assault claim(s), which remain pending at this point.

## RECOMMENDATION

The undersigned recommends that [44] Defendants' motion for summary judgment be granted as to Walker's classification and housing claims for Walker's failure to exhaust administrative remedies and that [73] Walker's motion for summary judgment be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Within 14 days after service of a copy of this Report and Recommendation a party may file written objections to it, specifically identify the findings, conclusions, and recommendations to which he objects. *L.U.Civ.R.* 72(a)(3). The District Court need not consider frivolous, conclusive, or general objections. Seven days after service are allowed for filing responses to objections. One who fails to timely file written objections is barred, except on grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this the 8th day of July 2019.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE